UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ROBERT FLUKER,

                     Petitioner,

    v.

PERRY RUSSELL,[1] *et al.,*

                     Respondents.

Case No. 3:17-cv-00299-MMD-CLB

ORDER

## I.    SUMMARY

Petitioner Robert Fluker filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 18 ("Petition").) This matter is now before the Court for adjudication on the merits of the petition and motions to, *inter alia*, supplement the record. (ECF Nos. 55, 57.) For reasons discussed below, the Court denies the motions and denies the Petition.

## II.    BACKGROUND

Fluker challenges his 2011 convictions following guilty pleas to robbery and an enhancement for which Fluker was sentenced 20 to 50 years imprisonment. (ECF No. 26-16.) Fluker alleges he was deprived of constitutionally effective assistance of counsel because each of his attorneys failed to file a motion to withdraw his guilty pleas or request a competency evaluation. (ECF No. 18 at 9-13.) Fluker's challenges to his convictions were denied on direct appeal and state postconviction review. (ECF No. 27-12.)

///

---

[1] It appears from the state corrections department's inmate locator page that Fluker is currently incarcerated at Northern Nevada Correctional Center ("NNCC"). *See* https://ofdsearch.doc.nv.gov/form.php (retrieved October 2021, under identification number 41631). The department's website reflects that Perry Russell is the warden for NNCC. *See* https://doc.nv.gov/Facilities/NNCC_Facility/ (retrieved October 2021). At the end of this order, the Court directs the Clerk of Court to substitute Fluker's current immediate physical custodian, Perry Russell, as Respondent for Isidro Baca, pursuant to, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

1    The evidence available to the state court tended to establish the following.[2]

2    On March 13, 2010, Fluker robbed an elderly slot-machine hostess and a liquor-

3    store clerk, only to suffer blows to his legs and head with a baseball bat at the hands of

4    liquor-store employees. (ECF Nos. 26-5 at 3-4; 26-6 at 6-9; 26-27 at 5, 8, 18-19; 33-1 at

5    7-8.) The State charged Fluker with two counts of felony robbery plus an elder

6    enhancement. (ECF No. 26-1 at 2-3.)

7    Fluker's August 11, 2011 presentence investigative report indicated witnesses

8    identified Fluker as the perpetrator of the robberies and Fluker was caught and beaten by

9    some witnesses. (ECF No. 33-1 at 7-8.) At the state postconviction-evidentiary hearing,

10   Fluker testified his first attorney told him the charges were not defensible because the

11   State had video depicting Fluker committing the crimes. (ECF No. at 26-27 at 17.) The

12   presentence investigative report further indicated Fluker had 12 prior-felony convictions

13   (two from Hawaii, two from Nevada, and eight from California) and was released from

14   custody less than five months before the robberies. (ECF No. 33-1 at 3-7.)

15   Fluker's first attorney testified at a state postconviction-evidentiary hearing that

16   the State offered to settle Fluker's case before the preliminary hearing if Fluker pleaded

17   guilty to all charges in exchange for the State's agreement to refrain from (1) filing a notice

18   of habitual criminal;[3] (2) filing a third charge for battery with a deadly weapon; and (3)

19   pursuing additional charges related to the robberies. (ECF No. 26-27 at 32, 38.)

20   Counsel testified that he understood the State attributed 12 prior-felony convictions

21   to Fluker and counsel discussed Fluker's criminal history with Fluker "at length." (ECF No.

---

22   [2]The Court makes no credibility findings or other factual findings regarding the truth
23   or falsity of evidence or statements of fact in the state court. The Court summarizes the
     same solely as background to the issues presented in this case, and it does not
24   summarize all such material. No assertion of fact made in describing statements,
     testimony, or other evidence in the state court constitutes a finding by this Court. Omission
25   of a specific piece of evidence or category of evidence does not signify the Court
     overlooked the evidence in considering Fluker's claims.

26   [3]At that time, upon a showing that Fluker had three prior felony convictions,
27   Nevada's habitual criminal statute permitted the court to impose a sentence of (1) life
     without possibility of parole; (2) life with the possibility of parole, with eligibility for parole
     beginning when a minimum of 10 years has been served; or (3) a definite term of 25
28   years, with eligibility for parole beginning when a minimum of 10 years has been served.
     *See* NRS § 207.010(1) as amended by 2009 Laws, ch. 156, § 1.

2

26-27 at 41; *see also* ECF No. 33-1 at 2-7.) Counsel was also aware the State must provide certified copies of three prior-felony convictions to prove habitual criminal status, but "from time to time," prosecutors were unable to obtain certified copies. (ECF No. 26-27 at 33, 37-38, 42-43.) Counsel testified that he had no doubt the State could prove Fluker was a habitual criminal and counsel did not do "anything" to independently determine whether or not Fluker's prior convictions could be certified for habitual criminal status, other than "review the NCIC,[4] talk to [the prosecutor], talk to the detectives who were very familiar with [Fluker], and then talk to [Fluker] himself." (*Id.* at 38, 42-44.) Counsel did not request certified copies of the prior felony convictions from the State because counsel believed it would cause the State to withdraw "from the entire negotiation process." (*Id.* at 46.)

Fluker's signed plea agreement reflects, that in exchange for the guilty pleas, the State promised, *inter alia*, not to seek habitual offender status on certain conditions. (ECF Nos. 26-5 at 4-5; 26-6 at 4-11.) The agreement reflects Fluker affirmed his "prior criminal history consisted of multiple prior felony convictions." (*Id.*) According to the agreement, the State retained discretion, *inter alia*, to "argue for an appropriate sentence at the time of sentencing," should Fluker (1) fail to appear at any scheduled proceeding in the matter; (2) suffer arrest in any jurisdiction for a violation of law; or (3) have misrepresented his prior criminal history. (ECF No. 26-5 at 4-5.)

The transcript of Fluker's change of plea hearing reflects Fluker understood the charges and possible penalties, including potential consecutive sentences for the convictions and enhancements (a maximum of 50-years imprisonment for consecutive sentences), and Fluker appropriately responded to the state district court's questions. (ECF No. 26-6 at 4-10.) Fluker affirmed that he had ample time to consult with his counsel, "explore all factual and legal issues about the case before entering pleas of guilty," and was completely satisfied with counsel. (*Id.* at 10.) Fluker confirmed that he reviewed and

---

[4]According to Fluker's sentencing counsel, "NCIC" stands for "National Crime Information Computer." (ECF No. 26-27 at 50.)

signed the Guilty Plea Memorandum with counsel and all statements there were true. (*Id.* at 10-11.) Fluker said that his pleas were made freely and voluntarily, without threats, promises, or coercion. (*Id.* at 9.) He also confirmed he understood his ultimate sentence would be decided solely by the court and no one else. (*Id.* at 8.)

Fluker did not appear for his initial sentencing hearing and was arrested for possession of a stolen vehicle. (ECF Nos. 26-8 at 3; 26-14 at 3-4; 46-1 at 6; 46-6; 49-1.) The court granted the State leave to file a notice of intent to seek habitual criminal status in accordance with the plea agreement. (ECF Nos. 26-8 at 3; 46-1 at 6; 46-7; 46-9.) The habitual criminal notice alleged only 11 prior-qualifying-felony convictions—two from Nevada, two from Hawaii, and seven from California. (ECF No. 26-9.)

Fluker's first attorney testified that Fluker "broached" the subject whether "he could withdraw his plea," when the State filed the habitual criminal notice, but counsel said that counsel advised Fluker, "we don't have a strong legal basis to do so." (ECF No. 26-27 at 39-40.) According to counsel, Fluker "quickly abandoned that issue" and pursued other means to reduce his sentencing exposure. (*Id.*) Fluker's first attorney withdrew as counsel because of a conflict of interest resulting from Fluker's failed attempts to reduce his sentencing exposure. (ECF Nos. 26-10 at 4; 26-11; 26-27 at 26, 40.)

The court appointed a second attorney to represent Fluker for sentencing. (ECF Nos. 26-12; 26-13; 26-15 at 2; 26-27 at 49.) At sentencing, the State announced it was unable "to secure the felony convictions" to prove Fluker was a habitual criminal, explaining, "California basically just purges all those records after a period of time." (ECF No. 26-15 at 7.) The State opted instead to pursue a maximum allowable sentence of 50-years imprisonment based on the crimes of conviction and Fluker's lengthy criminal record, which, the State argued, ran the "gamut of every type of crime that the Court can think of, short of sexual assault and murder," and included crimes of violence, drug-related offenses, and property crimes. (*Id.* at 7-11.) Fluker told the sentencing court that "everything [the prosecutor] said was true." (*Id.* at 11.) Fluker's sentencing counsel argued that although Fluker "has a long and lengthy criminal history," Fluker had "shown some

4

1 signs recently of making changes in this life." (*Id.* at 5.) The court did not sentence Fluker

2 as a habitual criminal but sentenced Fluker to the maximum allowable consecutive

3 imprisonment of 15 years for each robbery, plus a 20-year consecutive term for the elder

4 enhancement, which totaled 20 to 50 years.[5] (*Id.* at 11-12.)

5 **III.    GOVERNING STANDARD OF REVIEW**

6     **A.    Antiterrorism and Effective Death Penalty Act ("AEDPA")**

7     28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in

8 habeas corpus cases under the AEDPA:

9     (d) An application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a State court shall not be granted

10 with respect to any claim that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim—

11

12     (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

13

14     (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

15

16 28 U.S.C. § 2254(d).

17     A state-court decision is contrary to clearly established United States Supreme

18 Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applied

19 a rule that contradicts the governing law set forth in [the Supreme Court's] cases or

20 confronts facts that are materially indistinguishable from a [Supreme Court] decision and

21 nevertheless arrives at a different result." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)

22 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535

23 U.S. 685, 694 (2002)). A state-court decision is an unreasonable application of clearly

24 established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d)(2) "if

25 the state court identifies the correct governing legal principle from [the Supreme] Court's

26 decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at

27

28     [5]*See* NRS § 200.380 (robbery punishable by 2-to-15 years imprisonment); NRS §
193.167.1(f) (elder enhancement punishable by consecutive 1-to-20 years imprison-
ment).

75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . [rather] [t]he state court's application of clearly establish law must be objectively reasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-12 (internal citation omitted)).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult-to-meet" and "highly deferential standard for evaluating state-court rulings, which demands state-court decisions be given the benefit of the doubt." (internal quotation marks and citations omitted)). The petitioner bears the burden of proving by a preponderance of the evidence that he or she is entitled to habeas relief. *See Pinholster*, 563 U.S. at 569.

**B.   Standards for Evaluating Effective-Assistance-of-Counsel**

*Strickland* announced a two-pronged test for ineffective-assistance-of-counsel claims, which requires a petitioner demonstrate (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. Courts considering an ineffective-assistance-of-counsel claim "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689 (citation omitted).

The Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance. *See Burt v. Titlow*, 571 U.S. 12, 24 (2013). It is a

6

petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A court deciding an ineffectiveness claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. A petitioner making an ineffective-assistance claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* In considering an ineffective-assistance-of-counsel claim, a court is obligated to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 690-91. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Strategic choices made "after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* On the other hand, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

Establishing a state-court decision on an ineffective-assistance-of-counsel claim is especially difficult where the state court adjudicated the claim under *Strickland*. *See Harrington*, 562 U.S at 104-05. In *Harrington*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential to counsel's conduct, and when the two apply in tandem, review is doubly deferential. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland's* deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.").

## IV.   DISCUSSION

### A.   Ground 1.1

In Ground 1.1, Fluker alleges each of his counsel were ineffective because they did not file a motion to withdraw Fluker's guilty pleas. (ECF No. 18 at 9-11.) Fluker claims the habitual criminal notice, the State prosecutor's claim that he was unable to prove habitual criminal status, and Fluker's head injury during the offenses,[6] were "fair and just" reasons to withdraw his guilty pleas. (*Id.*)

#### 1.   Applicable Law Regarding Withdrawal of Pleas

A Nevada defendant may withdraw his or her guilty plea for any "fair and just" reason. *See* NRS § 176.165. However, at the time of Fluker's guilty pleas, "the only relevant question when determining whether a defendant presented a fair and just reason sufficient to permit withdrawal of his [or her] plea" was "whether the plea was knowingly, voluntarily, and intelligently entered." *Crawford v. State*, 30 P.3d 1123, 1125-27 (Nev. 2001); *see also Stevenson v. State*, 354 P.3d 1277, 1278-81 (Nev. 2015) (abrogating *Crawford's* restricted view of "fair and just" grounds and expanding what constituted "fair and just" grounds to set aside a guilty plea).

According to *Crawford*, a guilty plea was "presumptively valid, especially when it [was] entered into on the advice of counsel." *Crawford,* 30 P.3d at 1125-26 (internal footnotes omitted). Under *Crawford's* restricted view, a "substantial fair and just reason to withdraw a plea" required the state district court to consider whether "the defendant entered the plea voluntarily, knowingly, and intelligently" under the "totality of the circumstances." *Id.* "A thorough plea canvass coupled with a detailed, consistent, written plea agreement" sufficed to support "a finding that the defendant entered the plea voluntarily, knowingly, and intelligently." *Id*; *see also Brady v. United States,* 397 U.S. 742, 748 (1970) (holding the voluntariness of a guilty plea "can be determined only by considering all of the relevant circumstances surrounding it. . . [and] [w]aivers of

---

[6]Fluker's claim that counsel was ineffective by not filing a motion to withdraw Fluker's guilty pleas based on Fluker head injury is without basis as discussed in Ground 1.2. *See infra* pp. 16-19.

1   constitutional rights not only must be voluntary, but must be knowing, intelligent acts done

2   with sufficient awareness of the relevant circumstances and likely consequences.").

3           The Supreme Court, applying *Strickland* to counsel's advice in plea negotiations,

4   has held that where a defendant enters his or her plea upon the advice of counsel, the

5   voluntariness of the plea depends on whether counsel's advice "was within the range of

6   competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56-

7   60 (1985) (citing *McMann v. Richardson,* 397 U.S. 759, 771 (1970)). When a defendant

8   considers a plea agreement, reasonably competent counsel will attempt to learn all the

9   facts of the case and make an estimate of a likely sentence. *Id.* at 56-60 (relying

10  on *McMann,* 397 U.S. at 769-71.) In *McMann*, the Supreme Court held it is deficient

11  performance for an attorney to fail to provide good-faith advice about the sentencing

12  consequences of a guilty plea. 397 U.S. at 769-71. And, in *Rompilla v. Beard,* 545 U.S.

13  374, 389-90 (2005), the Supreme Court noted that failure to examine prior conviction

14  documents where counsel knows the State will rely upon them can constitute deficient

15  performance under *Strickland*, depending on the circumstances in the case. *See, e.g.*,

16  *Sand v. Estelle*, 551 F.2d 49 (5th Cir. 1977) (indicating counsel might render deficient

17  performance by misinforming petitioner that his prior convictions can be used to support

18  a life sentence as a habitual offender where petitioner pleads guilty in reliance on such

19  erroneous advice.)

##              2.    State Appellate Court's Determination

21          The state appellate court held as follows on the corresponding claims:

22              [T]o prove ineffective assistance of counsel sufficient to invalidate a
            judgment of conviction based on a guilty plea, a petitioner must demonstrate
23          that his counsel's performance was deficient in that it fell below an objective
            standard of reasonableness, and resulting prejudice such that there is a
24          reasonable probability, but for counsel's errors, petitioner would not have
            pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474
25          U.S. 52, 58-59 (1985); *Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102,
            1107 (1996). Both components of the inquiry must be shown. *Strickland v.
26          Washington*, 466 U.S. 668, 697 (1984). We give deference to the court's
            factual findings if supported by substantial evidence and not clearly
27          erroneous but review the court's application of the law to those facts de
            novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

28

                                        9

1

2          First, Fluker argues his counsel were ineffective for failing to file a
   motion to withdraw his guilty plea. Fluker asserted he wished to withdraw
3  his plea because he initially entered his guilty plea to avoid imposition of the
   habitual criminal enhancement, but after he failed to appear for the
4  sentencing hearing the State had decided to pursue that enhancement.
   Fluker asserted counsel had a duty to file the motion to withdraw his guilty
5  plea under these circumstances. Fluker failed to demonstrate his attorneys'
   performances were deficient or resulting prejudice.

6          At the evidentiary hearing, Fluker's initial counsel testified Petitioner
7  sought his advice regarding moving to withdraw the guilty plea, counsel
   stated he advised Fluker against pursuing that motion, and Fluker
8  abandoned pursuit of the motion to withdraw the guilty plea. The district
   court concluded counsel's testimony was credible and Fluker's was
9  incredible. Substantial evidence supports the district court's conclusion.
   Given counsel's advice and Fluker's decision to abandon pursuit of
10 withdrawal of his guilty plea, Fluker failed to demonstrate counsel acted in
   an objectively unreasonable manner.

11         Moreover, Fluker did not question his second counsel at the
12 evidentiary hearing regarding counsel's actions or decisions with respect to
   a motion to withdraw his guilty plea. As stated previously, the district court
13 concluded Fluker's testimony regarding this matter was not credible.
   Because Fluker failed to question his second counsel at the evidentiary
14 hearing regarding this issue, he did not meet his burden to demonstrate that
   counsel was deficient in this regard. *See Means v. State*, 120 Nev. 1001,
15 1012, 103 P.3d 25, 33 (2004) (explaining a petitioner has the burden to
   establish the factual allegations underlying a claim of ineffective assistance
16 of counsel); *see also Strickland*, 466 U.S. 690 (recognizing "counsel is
   strongly presumed to have rendered adequate assistance").

17         Fluker also failed to demonstrate a reasonable probability of a
18 different outcome had counsel filed a motion to withdraw his guilty plea. At
   the evidentiary hearing, Fluker acknowledged he chose not to attend the
19 sentencing hearing out of fear he would receive a lengthy sentence.
   Following Fluker's decision not to attend the sentencing hearing, the State
20 was free to pursue any appropriate sentence due to a provision in the guilty
   plea agreement. That the State was free to pursue any appropriate
21 sentence, including the habitual criminal enhancement, because Fluker
   chose not to attend the initial sentencing hearing does not demonstrate a
22 fair and just reason for withdrawing the guilty plea. *See* NRS 176.165;
   *Stevenson v. State*, 131 Nev. ___, ___, 354 P.3d 1277, 1282 (2015)
23 (explaining that entry of a guilty plea should not "become a mere gesture, a
   temporary and meaningless formality reversible at a defendant's whim."
24 (internal quotation marks omitted)). Therefore, we conclude the district court
   did not err in denying the claim.

25 (ECF No. 27-12 at 3-5.)

26 ///

27 ///

28 ///

### 3.   Deferential Disposition of Ground 1.1(a)[7]

Fluker claims that his first attorney rendered ineffective assistance by not filing a motion to withdraw Fluker's guilty plea because Fluker entered into the plea agreement to avoid a habitual criminal enhancement, and that reason "disappeared" when the State filed a notice of intent to prove the habitual criminal enhancement. (ECF No. 18 at 10.)

The state court record reflects Fluker's first attorney was aware of 12 prior-felony convictions attributed to Fluker and discussed Fluker's criminal history with Fluker "at length." Fluker, through his counsel, specifically negotiated the State's agreement not to pursue habitual criminal status on certain conditions. Fluker also affirmed in his signed plea agreement that his "prior criminal history consisted of multiple prior felony convictions." Fluker agreed the State could nevertheless pursue appropriate sentencing, including habitual criminal status, should Fluker fail to appear at sentencing, acquire new charges, or misrepresent his criminal history. At the change of plea hearing, Fluker affirmed his guilty pleas were voluntary and counsel sufficiently explained the terms of the plea agreement, including sentencing. Fluker also confirmed that he understood the potential consecutive sentences and that his sentence would be determined solely by the Court and no one else. The state district court thoroughly canvassed Fluker before accepting his guilty pleas and concluded Fluker's pleas were "voluntary," and Fluker fully understood the nature of the charges and consequences of his guilty pleas. *See supra* pp. 2-4.

Under these circumstances, Fluker could reasonably foresee the State's response to his breaches of the plea agreement and therefore Fluker knowingly triggered the State's exercise of its discretion to pursue habitual criminal status when he failed to appear for scheduled proceedings and was arrested for an additional violation of law. Since the record reflects Fluker understood his plea agreement and the consequences of his actions for his sentencing exposure, it was objectively reasonable for counsel to

---

[7]The Court subdivides Ground 1 as follows: 1.1(a) alleges ineffective assistance of first counsel; 1.1(b) alleges ineffective assistance of sentencing counsel.

1    advise Fluker that the habitual criminal notice did not provide a legal basis to assert

2    Fluker's guilty pleas were not knowing, voluntary, and intelligent. *See Crawford,* 30 P.3d

3    at 1125-26; *see also United States v. Ensminger*, 567 F.3d 587, 593 (9th Cir. 2009)

4    (internal quotation marks omitted) (explaining that a guilty plea "is not a placeholder that

5    reserves [a defendant's] right to our criminal system's incentives for acceptance of

6    responsibility unless or until a preferable alternative later arises.").

7        The state appellate court's rejection of Fluker's claim as to his first attorney

8    constitutes an objectively reasonable application of *Strickland's* performance prong to this

9    state court record and Fluker is entitled to no federal habeas relief for Ground 1.1(a).

10                      **4.    Ground 1.1(b)**

11       Fluker alleges that his sentencing counsel provided ineffective assistance by not

12   moving to withdraw Fluker's guilty plea when the prosecutor claimed he was unable to

13   obtain certified prior felony-conviction documents from California to prove Fluker was a

14   habitual criminal at sentencing. (ECF No. 18 at 10-11.)

15                      **a.    Additional Background**

16       Fluker filed a *pro se* state postconviction petition and was later represented in his

17   postconviction proceedings. (ECF Nos. 26-22; 26-23.) In the *pro se* state petition, Fluker

18   alleges, *inter alia*, that his first attorney was ineffective in not filing a motion to withdraw

19   the guilty plea, but it did not allege that claim against sentencing counsel.[8] (ECF No. 26-

20   22 at 11-12.) Postconviction counsel did not amend the *pro se* petition and later confirmed

21   at the state postconviction-evidentiary hearing that the claim was asserted solely against

22   Fluker's first attorney. (ECF Nos. 26-24; 26-27 at 64.) Consistent with postconviction

23   counsel's representations to the state district court, sentencing counsel did not testify

24   about a motion to withdraw the guilty plea. (ECF No. 26-27 at 49-55.) Sentencing counsel,

25

26

27       [8]The *pro se* state postconviction petition instead alleged sentencing counsel was
     ineffective by failing to (1) object to incorrect information in the Presentence Investigative
28   Report; (2) object to the State's argument for imposition of the maximum sentence; and
     (3) object to the court's failure to follow applicable sentencing guidelines. (ECF No. 26-22
     at 12-14.)

1  however, testified that Fluker never alerted counsel that any information on Fluker's

2  presentence investigative report was incorrect. (*Id.* at 50-51.)

3         At the postconviction-relief hearing, the State presented argument about the prior

4  conviction documents:

> [Y]our Honor, leads me to talk about the significance of Exhibits I, 2
> and 3. All those show is that for three of the arrests that Mr. Fluker had in
> his long criminal history, which dates back, by his own admission, to 1976
> -- three of those, the records were not kept by California and they're no
> longer available. That's all it shows. It doesn't show that there were no
> crimes, it doesn't show that he did not have prior felony convictions. It
> proves nothing, other than what we already know, which is that the records
> of those were no longer available in terms of certified copies.

10  (ECF No. 26-27 at 70.)

11        The state district court misapprehending the record, incorrectly ruled that

12  sentencing counsel testified that Fluker never informed counsel that Fluker wanted to

13  change his guilty pleas. (ECF No. 27-1 at 8-9.) The court went on to conclude that

14  sentencing counsel did not render ineffective assistance by not moving to withdraw the

15  pleas.[9] (*Id.*) Postconviction counsel withdrew as counsel following the district court's

16  denial of relief. (ECF No. 27-4.)

17        Fluker's postconviction-appellate counsel argued that sentencing counsel

18  provided no testimony concerning a motion to withdraw the guilty pleas and therefore did

19  not contradict Fluker's testimony that, when Fluker asked sentencing counsel to file a

20  motion to withdraw Fluker's guilty pleas, counsel told Fluker that he was bound by the

---

22  [9]Respondents neither objected to the state court's addressing this claim against
sentencing counsel nor asserted an exhaustion defense. The state courts appear to have
23  intentionally departed from the party presentation principle by addressing the
effectiveness of sentencing counsel in response to Fluker's claim that his first attorney
24  failed to withdraw Fluker's guilty plea when the State was unable to prove habitual criminal
status because sentencing counsel—not the first attorney—represented Fluker at the
25  time the State suggested it was unprepared to prove Fluker was a habitual criminal. *See
supra pp. 4; see also Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("To the
26  extent courts have approved departures from the party presentation principle in criminal
cases, the justification has usually been to protect a *pro se* litigant's rights." (citing *Castro
27  v. United States,* 540 U.S. 375, 381-83 (2003) (citation and footnote omitted) (affirming
court's authority to recast *pro se* litigant motions to "avoid an unnecessary dismissal" or
28  "inappropriately stringent application of formal labeling requirements, or to create a better
correspondence between the substance of a pro se motion's claim and its underlying
legal basis"))).

pleas. (ECF No. 27-7 at 11-12.) Despite the state district court's finding that Fluker's evidentiary-hearing testimony lacked credibility, postconviction-appellate counsel argued that Fluker's uncontradicted testimony met Fluker's burden to establish sentencing counsel rendered ineffective assistance by failing to move to withdraw his guilty pleas when the State said it was unable to prove habitual criminal status. (*Id.* at 14.)

### b.    State Appellate Court Unreasonably Applied *Strickland*

As previously discussed, *Strickland* requires a court to assess a claim of constitutionally effective assistance "in light of all the circumstances." *Strickland*, 466 U.S. at 690.

The state appellate court undertook the ineffective-assistance-of-counsel claim as to sentencing counsel's professional conduct, but then unreasonably contravened *Strickland* by failing to consider the totality of the circumstances in the state court record before it rejected Fluker's claim on the basis that sentencing counsel provided no testimony concerning a motion to withdraw the pleas. The state appellate court's decision is not entitled to AEDPA deference and Ground 1.1(b) is reviewed *de novo. See*, *e.g.*, *Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of [the state court's] error, our review of petitioner's underlying . . . claim is unencumbered by the deference AEDPA normally requires.").

### c.    Disposition of Ground 1.1(b)

On *de novo* review, this Court finds the state court record fails to overcome the "strong presumption" under *Strickland* that sentencing counsel's performance fell "within the wide range of reasonable professional assistance" based on an assessment of "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90.

The record reflects that at the relevant time, sentencing counsel was aware of the presentence investigative report, which included information that indicated Fluker's crimes were likely indefensible and Fluker previously suffered at least 12 prior-felony convictions, including two from Nevada, two from Hawaii, and eight from California. *See*

*supra* at pp. 2-5. With deference to sentencing counsel's perspective at the time of sentencing, Fluker's lengthy prior record, and that only three prior felonies were needed to expose Fluker to a life sentence as a habitual criminal, it would have been objectively reasonable for counsel to have predicted a motion to withdraw the guilty pleas would have worked against Fluker, e.g., counsel could have reasonably predicted a motion to withdraw the guilty pleas would have given the State additional time and motivation to prove Fluker was a habitual criminal by obtaining certified copies of the two relatively recent prior Nevada felony convictions plus at least one prior felony conviction from Hawaii. Counsel might also have reasonably predicted that, despite the State's assertions that it was unable to obtain prior felony conviction documents from California, a motion to withdraw the guilty pleas might have caused the State to successfully strengthen its efforts to obtain a certified copy of at least one prior California felony conviction. This, together with the Nevada convictions, might have reasonably supported a habitual criminal adjudication.

Under the circumstances known to sentencing counsel, an objectively reasonable attorney could have reasonably rejected a strategy to seek withdrawal of the guilty pleas as an imprudent and risky strategy that was comparatively disadvantageous because it was more likely to place Fluker in jeopardy of a life sentence without possibility of parole as a habitual criminal than the ultimate circumstances presented at sentencing. Because the record demonstrates Fluker wished to avoid the prospect of a life sentence as a habitual criminal, and the State did not pursue imposition of a life sentence as a habitual criminal, despite Fluker's breaches of the plea agreement and the resulting habitual criminal notice, an objectively reasonable attorney could have viewed the circumstances at sentencing as a fortuitous development.

Based on the evidentiary record and upon *de novo* review, this Court holds that sentencing counsel's performance was not objectively unreasonable under the highly deferential standard required by *Strickland*. Fluker is not entitled to federal habeas relief on Ground 1.1(b).

15

## B.   Ground 1.2

In Ground 1.2, Fluker alleges trial counsel were ineffective because although they knew Fluker suffered a head injury on the date of the offenses, they did not seek a competency evaluation. (ECF No. 18 at 11-13.)

### 1.   Additional Background

At the state postconviction-evidentiary hearing, Fluker testified the blow to his head with a baseball bat after the liquor store offense caused him to suffer blood loss, staples on the back of his head, and temporary confinement to a wheelchair. (ECF No. 26-27 at 4-7.) Fluker testified the head injury caused him mental problems, memory loss, and a loss of vocabulary. (*Id.* at 6.)

On June 2, 2010, almost three months after Fluker's injury, his first attorney was present at Fluker's initial appearance when Fluker informed the state district court that he had taken no medicine within 24 hours and felt "good." (ECF No. 26-2 at 4.)

At the state postconviction-evidentiary hearing, Fluker's first attorney testified that counsel was aware Fluker was struck on the head with a baseball bat and hospitalized on the day of the offenses. (ECF No. 26-27 at 45.) Counsel was also aware, based on National Football League news, that head injuries can cause concussions and other complications. (*Id.*) Counsel testified Fluker was nevertheless "very smart, articulate, engaging, and affable," during their "numerous conversations" and correspondence. (*Id.* at 34, 42.) Counsel said Fluker exhibited no memory loss, was "very detail-oriented," and "could remember facts and circumstances about various incidents." (*Id.* at 46.) Counsel also said Fluker "was able to understand the nature of the charges and aid and assist" with his defense and defense strategies. (*Id.* at 34.) Counsel explained that Fluker provided details supporting self-defense to a potential charge for battery with a deadly weapon because Fluker was defending himself against the store clerks who beat him following the second robbery. (*Id.* at 35.) As a result of his interactions with Fluker, counsel said he "never had any reasonable doubt about [Fluker's] competency." (*Id.* at 34.) Counsel testified that Fluker demonstrated he "could very well aid and assist counsel and

he understood the nature of the charges," and counsel perceived no reasonable basis to ask the Court to order a competency evaluation. (*Id*. at 45-46.) Fluker's sentencing attorney testified that Fluker did not appear confused or incompetent, and appeared to understand their conversations. (*Id*. at 50.)

### 2.    State Appellate Court's Determination

The state court determination on the corresponding claim is as follows:

> [F]luker argues his counsel were ineffective for failing to seek a competency evaluation because he had suffered a head injury, which caused memory loss and mental health issues. Fluker failed to demonstrate his attorneys' performances were deficient or resulting prejudice. At the evidentiary hearing, both of Fluker's counsel testified Fluker never gave them any reason to question his competence. They both testified Fluker never appeared to be confused and he helped them with his case. The district court concluded counsel were credible and substantial evidence supports that conclusion. As counsel had no basis to pursue a competency evaluation, their actions did not fall below an objective standard of reasonableness. In addition, Fluker failed to demonstrate he did not have the ability to consult with his attorney with a reasonable degree of rational understanding and that he did not have a rational and factual understanding of the proceedings against him. *See Melchor-Gloria v. State*, 99 Nev. 174, 179-80, 660 P.2d 109, 113 (1983) (citing *Dusky v. United States*, 362 U.S. 402 (1960)). Accordingly, Fluker failed to demonstrate a reasonable probability of a different outcome had counsel sought a competency evaluation. Therefore, we conclude the district court did not err in denying this claim.

(ECF No. 27-12 at 3-5.)

The Nevada Court of Appeals' decision is neither contrary to, nor an unreasonable application of *Strickland* and is not based on unreasonable determination of facts considering the record presented in the state-court proceedings.

### 3.    Applicable Law

Under Nevada State law:

1. A person may not be tried or adjudged to punishment for a public offense while incompetent.

2. For the purposes of this section, "incompetent" means that the person does not have the present ability to:

    (a) Understand the nature of the criminal charges against the person;

    (b) Understand the nature and purpose of the court proceedings; or

17

1
2

        (c) Aid and assist the person's counsel in the defense at any time during the proceedings with a reasonable degree of rational understanding.

3
4
5

NRS § 178.400. If doubt arises as to the competence of a defendant, the trial court may suspend proceedings until the question of competency is determined. *See* NRS § 178.405.

6
7
8
9
10
11
12
13
14

      The Supreme Court test for competency to stand trial is whether defendant has "sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him [or her]." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (internal quotation marks omitted) (quoting *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam), and then (citing *Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.")). *Dusky* applies to guilty pleas. *Id.* at 397-99.

15

### 4.    Disposition of Ground 1.2

16
17

      The state appellate court reasonably determined counsel's failure to file a motion to test Fluker's competency was not deficient performance under *Strickland*.

18
19
20
21
22
23
24
25
26
27
28

      The fact that Fluker suffered a serious injury that affected his memory and speech, caused mental problems, and temporarily placed him in a wheelchair, did not present itself to any degree that gave counsel a reasonable doubt about Fluker's competency. (ECF No. 26-6.) Fluker's assistance to counsel with respect to the case, and Fluker's guilty pleas a year after the injury, contradicted any suspicion that Fluker's head injury undermined competency. Sentencing counsel, who represented Fluker a year and a half after the injury, likewise saw no basis to suspect a reasonable doubt about Fluker's competency. To the contrary, each of Fluker's counsel testified that they experienced Fluker as having the present ability to consult with them as his lawyers with at least a reasonable degree of rational understanding and had a rational, as well as factual, understanding of the proceedings against him, as required by *Dusky*.

1   The state appellate court's application of *Strickland's* performance prong to the

2   state court's record was objectively reasonable and Fluker is not entitled to federal

3   habeas relief on Ground 1.2.[10]

4   **V.   CERTIFICATE OF APPEALABILITY**

5   This is a final order adverse to Fluker. Rule 11 of the Rules Governing Section

6   2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). This

7   Court therefore has *sua sponte* evaluated the claims within the Petition for suitability for

8   the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-

9   65 (9th Cir. 2002). Under § 2253(c)(2), a COA may issue only when the petitioner "has

10   made a substantial showing of the denial of a constitutional right." With respect to claims

11   rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find

12   the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

13   *McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

14   (1983)). Applying this standard, this Court finds that a certificate of appealability is

15   unwarranted.

16   **VI.   CONCLUSION**

17   It is therefore ordered that Petitioner Robert Fluker's writ of habeas corpus petition

18   (ECF No. 18) is denied.

19   ///

20

21   [10]Respondents' Answer alleged that Fluker "was still eligible for large habitual criminal adjudication without the California felonies," reasoning "[t]he State still had four

22   prior felony convictions" other than those from California. (ECF No. 45 at 13.) Without determining whether to expand and consider material beyond the existing state court

23   record," the Court issued an order, in accordance with Rule 7 of the Rules Governing Section 2254 Cases, requesting Respondents submit "certified copies of four prior felony

24   convictions in the same manner and in the same form as would have been required to support an adjudication that [Fluker] was a habitual criminal under Nevada law applicable

25   at [Fluker's] sentencing hearing" and directing Fluker "to admit or deny the correctness of the exhibits." (ECF No. 50.) Respondents submitted prior conviction documents from

26   Nevada and California and Fluker filed a Response to the Exhibits. (ECF Nos. 51-54; 58.) Respondents filed a "Motion For Leave to Supplement the Record & Reply to [Fluker's]

27   Response to Exhibits" and Fluker filed an opposition requesting permission to file a reply if Respondents' motions are granted. (ECF Nos. 55-58.) The Court need not, and does

28   not, expand the record to resolve the merits. Respondents' motions (ECF Nos. 55, 58) are denied. Fluker's request to reply to Respondents' motions (ECF No. 57) is denied as moot.

1      It is further ordered that the Court declines to expand the record and declines to

2 consider ECF Nos. 51 through 58 in determining the merits.

3      It is further ordered that Respondents' motions (contained in ECF No. 55 and 58)

4 are denied as moot.

5      It is further ordered that Fluker's request (ECF No. 57) to reply to Respondents'

6 motions is denied as moot.

7      It is further ordered that a certificate of appealability is denied.

8      The Clerk of Court is directed to substitute Perry Russell for Respondent Isidro

9 Baca.

10      The Clerk of Court is directed to enter judgment accordingly and close this case.

11      DATED THIS 26th Day of October 2021.

12

13

14      _____

15      MIRANDA M. DU
        CHIEF UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28